J. W. BREEN, Appellant, v. IOWA CENTRAL RAILWAY
COMPANY, Appellee.

**Railroads:** ACCIDENTAL DEATH: DUE CARE: PRESUMPTION. In the
absence of eye witnesses to an accident from which death results
it will be presumed that decedent was in the exercise of reasonable
care for his own safety; and the jury may accept this presumption
as the basis for finding that there was no contributory negligence,
unless the other evidence leads to a different conclusion.

**Same:** NEGLIGENCE: CHOICE OF METHODS. Where there are two meth-
ods of performing a duty an employee choosing the more dangerous
method is not as a matter of law guilty of negligence, but it is then
for the jury to say whether he exercised ordinary care.

**Same:** ASSUMPTION OF RISK: INSTRUCTIONS. Assumption of risk in-
volves the united elements of knowledge of the defect or condition
and appreciation of the danger. The instructions in this case,
while more elaborate by way of illustration than usual, are held
to properly state the rule.

**Same:** EVIDENCE: SUBMISSION OF ISSUE. In this action for the death
of a brakeman while assisting in making up a train in one of the
defendant's yards, with which he was acquainted, the evidence is
held to require submission to the jury of the question of assumption
of risk.

**Same:** NEGLIGENT DEATH: EVIDENCE. Where the evidence touching
the cause of an employee's death is as consistent with the exercise
of due care by defendant as with its negligence, the plaintiff must
fail. Under the evidence the cause and manner of decedent's
death was a mere matter of conjecture, and as consistent with due
care on the part of defendant as with any other theory.

*Appeal from Hardin District Court.*—HON. R. M. WRIGHT,
Judge.

FRIDAY, NOVEMBER, 14, 1913.

Action at law to recover damages for death occasioned by negligence. From a verdict and judgment for the defendant, the plaintiff appeals. *Affirmed.*

*Wade, Dutcher & Davis,* and *P. W. Tourtellot,* for appellant.

*Boardman & Lawrence,* and *W. H. Bremner,* for appellee.

Withrow, J.—I. Ray Ward, a brakeman employed by the defendant, was killed during the night of August 26, 1908, while engaged in his employment. He had been engaged in that capacity and on this "run" for seven months. The accident which resulted in his death arose during switching operations at Abbott, at which time the train crew, of which Ward was front brakeman, was engaged in making up a train to return to Mason City. At the place of the accident there was a depression in the track, called a sag, which was the condition in which the grade and track were built. This part of the track continues from the north, running south, at a descending grade of two and five-eighths inches to the hundred feet and for a distance of over three hundred feet, then for a distance of between one hundred and two hundred feet it is level, where an ascending grade to the south commences, it being of about the same rate of ascent as is the descent in that from the north. The main line of the track runs north and south. East of the main line some eleven or twelve feet and parallel with the main track is a passing track with a switch at the north and connecting with the main track. At this time two cars of brick were on the passing track. Six loaded cars and the caboose had been cut off and were left on the main line with the air brakes set; the north car of the six being at or near the foot of the ascending grade to the south. It was desired to remove the two cars from the passing track and place them on the main line to

permit other switching operations; the conductor in charge testifying that it was his intention to have the two cars lie on the main track and later couple them to the six cars. When the two cars were on the main track, at a signal from some one of the crew, the engines pushed them south at a rate of speed which the several witnesses state was three or four miles an hour; Fordham, the rear brakeman, walking by them until they had passed the switch. In pushing the two cars the engine moved about two car lengths, after which the cars proceeded through the momentum thus received, with whatever addition resulted to it from the decline in the track and the weight of the loaded cars. It was the duty of Ward to stop the cars at a proper time by applying the brakes. Two methods were afforded: One by opening the angle cock on the car, which would set the air brakes, and the other was by climbing on top of the car and setting the brakes by hand. This latter method was evidently chosen by Ward. The last seen of him was when he walked across to the west side of the track. Soon after his body was found lying across the east rail of the track and about twenty-five feet north of the second of the two loaded cars. The two cars had then been connected with the six cars by automatic coupling. The night was dark; there was rain at the time; and no one saw the accident; and circumstances alone shed light upon the manner in which it happened. Ward at the time carried a lantern. Broken glass from it and also his hat were found on the sills between the two cars which were loaded with brick. The remainder of the lantern was found lying near his body.

Different grounds of negligence were charged, but in submitting the case to the jury the trial court eliminated all but four. No error is alleged for the refusal to submit the remaining grounds, and we need give them no further attention. The particular grounds given to the jury were: (1) In requiring Ward to ride on top of the car that was knocked back, when it was very dark, where he could not see the cars

to which the coupling was to be made, when it was on a down-grade, and the cars were heavily loaded and sent back at a high and dangerous rate of speed. (2) Because the engineer in kicking back the cars negligently operated his engine at a high and dangerous rate of speed, considering the grade and the distance the cars were to travel. (3) In kicking the cars back in the dark at a dangerous rate of speed. (4) In operating its cars in the darkness without lights in the yards and without lights or signals on the cars to which the two cars were to be coupled.

The action was brought by J. W. Breen, as assignee of the administrator of Ray Ward. For its answer the defendant entered a plea in abatement, based upon the averment that the assignment to Breen was without consideration, that it had not been ordered or approved by the court, was void, and that the plaintiff was not the real party in interest. The answer further pleaded contributory negligence, assumption of a risk incident to his employment, and a general denial of all negligence. There was a trial to a jury resulting in a verdict for the defendant, from which plaintiff appeals.

II. Many errors are assigned. With the exception of the tenth alleged error, which relates to overruling a motion for new trial, all assignments are in criticism of instructions given by the trial court.

It is the claim of the appellee that, regardless of the questions of error in the instructions, which it does not concede, the fact record is such that no negligence on the part of the appellee is shown; that the theory as to the manner and cause of the death of Ward is conjectural, being based entirely on circumstances, from which conclusions as to the cause of the injury may be as readily and reasonably drawn in support of freedom from negligence by the appellee and contributory negligence by Ward as in support of contrary propositions.

At the close of plaintiff's testimony the defendant moved for a directed verdict in its favor, which was denied. No

appeal was taken from such ruling. In the motion for a new trial the plaintiff urged that the verdict was contrary to the evidence and not supported by the evidence. In overruling the motion the trial court necessarily passed upon every question presented in its several grounds and concluded that it was not well taken, otherwise, had it been determined that as to any one of the grounds presented there had been prejudicial error, its duty to set aside the verdict would have controlled. We therefore first inquire whether, regardless of the alleged errors, there were such facts proven or in dispute as entitled the plaintiff to have the verdict of the jury upon them, or were they such that no other verdict than that which was returned could properly have been found.

III. As there were no eyewitnesses to the immediate circumstances which resulted in the death of Ward, there arises the presumption that at the time, prompted by the natural instinct of self-preservation, he exercised reasonable care for his own safety. This rule, uniformly recognized, creates an inference or presumption which the jury may accept as the basis for finding that there was no contributory negligence unless other evidence in the case is such as to lead to a different finding. *Gray v. Railroad Co.,* 143 Iowa, 268; *Lunde v. Cudahy Co.,* 139 Iowa, 688; *Bell v. Clarion,* 113 Iowa, 126.

1. RAILROADS: accidental death: due care: presumption.

The appellee urges that as there were two methods by which the brakes could be applied to the moving car, one by turning the cock which controlled the air, which could be done from the ground, and the other by the application of the hand brake, which only could be done by mounting the moving car, it was the duty of the deceased to take the means which were safer, and that in not so doing he was negligent. The rule is that, when one adopts a more dangerous way to perform a given duty when a safe way is open to him, such does not, as a matter of law, constitute negligence; but it is a question of fact for the jury whether in so doing he used ordinary

2. SAME: negligence: choice of methods.

care. *Gibson v. Railway Co.*, 107 Iowa, 596; *Stephenson v. Brick Co.*, 151 Iowa, 376. We must then dismiss the contention as to contributory negligence, so far as it relates to the questions raised by this appeal, and turn to those of defendant's negligence and to the assumption of risk.

IV. As to the latter, holding to the claim of appellant and the theory upon which the case was tried, negligence was predicated, not upon the condition or manner of construction of the track which resulted in the "sag" nor upon any defect in the cars, engine, or appliances with which the deceased was called upon to work, unless it be- as to the condition of one of the brakes, which we will later refer to, but is charged to have been in the operation of the engine and the application of its power to the two brick cars at the time.

The doctrine of assumption of risk involves the united elements of knowledge of the defect or condition and appreciation of danger. *Brownfield v. Railway Co.*, 107 Iowa, 254; *Stomne v. Hanford Produce Co.*, 108 Iowa, 140.

8. SAME: assumption of risk: instructions.

In submitting the case to the jury, the trial court instructed upon the question of assumption of risk, making two divisions of the class of cases coming within the rule: The first, risk of danger necessarily and usually incident to the business, if known to the employee; second, risks that arise but are not necessarily and usually incident to the employment, which are sometimes assumed by the employee and sometimes not. As to the second class the court instructed that if they were fully known to the employee, and he appreciated the danger, he would be held to have assumed the risk, otherwise not. While complaint is made of the instructions upon this question, we think that when read together they are not subject to the criticism of having been prejudicial error, as they stated the approved rule; and, while more than usual elaboration of the idea and rule was given by way of illustration, it did not tend to obscure it.

But the appellant further claims that, even though the

instructions be not found subject to criticism as to form and expression, still it was error to submit the question, as there was no evidence on which to base it. To this we do not agree. The deceased was engaged in an employment which carried with it many dangers, even under conditions where there was due care exercised by his coemployees. The boarding of moving cars at night and during the prevalence of storm were incidents of his employment. While of course they were not always present, it was not an unusual situation, so far as time, place, and methods entered into it, unless it be that there were at this particular time unusual acts or conditions which were negligent, causing a dangerous situation, and which he was not bound to know and appreciate. But as to such the trial court instructed the jury that before the assumption of risk, as defined in the second class, could be available as a defense, the burden of proof was upon the defendant to establish it by a fair preponderance of the evidence. We think the criticism that there was no evidence upon which to base such instruction cannot be sustained, even the evidence as to negligence such as to warrant a submission of the case to the jury and a finding of liability on that ground.

4. SAME: evidence: submission of issue.

V. But beyond this is the larger and controlling question whether the evidence shows negligence on the part of the defendant, the appellee. In the first division of this opinion we have set out the substance of the testimony that has bearing upon this charge. The deceased was a young man who had for seven months been in the employ of the appellee on this particular run and had knowledge of the local situation. It is shown without dispute that the means adopted in the switching operations were such as were usual and customary in like operations, and, aside from the charge of excessive speed and failure to furnish proper lights in the yards and at the place where the six cars were standing on the track, there is nothing which would warrant a finding of negligence by the de-

5. SAME: negligent death: evidence.

fendant. While in the original petition it is charged that the brakes on the two cars were defective, the trial court did not sumbit such as a ground of negligence; and, as appellant does not in its assignment of error urge or rely upon the failure to include that charge, we consider the case only upon the grounds submitted.

Ward's hat and broken pieces of glass from the lantern were found on the end beam or sill of the south car between the two loaded cars. It is not only a fair inference but in entire harmony with the circumstances that he fell between the two cars and was crushed under the wheels of the north one in its movement to the south. When found his body was fifteen or twenty feet north of the north car, which was sixty feet or more from the point where, after the accident, was the point of coupling between the two cars and the six cars. The air brakes were set on the six cars. There is no evidence of such force of contact as would or did push the six cars any further to the south from where they originally stood.

It is a conclusion entirely consistent with all the circumstances that Ward fell between the cars from the top of one of them, or while attempting to go between them, and at or near the place where his body was found; and that the accident occurred, not because of the impact or shock of the meeting cars, but before that had come. If such conclusion be correct or as consistent with the facts as is the charge of negligence of the defendant, it necessarily follows that the failure to have a light at the six cars would not be negligence which caused or contributed to his death; neither would the speed at which the cars were then moving be so considered. Nor would the fact that the yards were unlighted, excepting by the lanterns of the employees, be a ground of negligence, for it is not contradicted that the surroundings were such as were usual and which the deceased knew. The facts are such that, even allowing to appellant the fullest force of the claim made as to the cause and manner of death, it is yet a matter

of conjecture with which the claim of failure to show negligence of the defendant is as equally consistent.

But, to sustain the theory that the death of Ward resulted from the negligent causes charged or out of them, the facts and circumstances relied upon must be of such nature and weight, and be so related, as to render it reasonably probable and more probable that the accident and death were caused by such negligence rather than from any other act or condition. *Magee v. Jones County,* 161 Iowa, 296; *Gordon v. C., R. I. & P. R. R.,* 146 Iowa, 594; *Lunde v. Cudahy Co.,* 139 Iowa, 688. From this record such cannot be concluded.

It follows that the verdict has full support in the facts, and even which under the law should have been rendered, and even though there may have been error in the instructions, as claimed, such was without prejudice to the general result, as no negligence of the defendant was shown, and the trial court ruled correctly in holding that the verdict was not contrary to the evidence. While it may be true, as claimed by the appellant, that the instructions, as to some features of the case, placed a heavier burden of proof, as to particular facts, upon him than should have been required, there yet remains the larger and ultimately governing fact that the evidence did not show actionable negligence. It is therefore unnecessary for us to consider in more detail the various assignments of error.

The judgment of the trial court is *Affirmed.*

DEEMER, LADD, and GAYNOR, JJ., concur. WEAVER, C. J., took no part.